## David Verplank v. Harvey B. Hall.

*Practice in the Supreme Court: Amending records: Laches.* An appeal will not be dismissed on the ground of an imperfection in the record,—a deposition taken and used in the Court below, not being found in the return. The proper remedy for such defect should be sought by motion to amend the return. But such a motion, after the cause is on hearing, and six months after the defect was known to the party who claims to be prejudiced by it, is too late.

VERPLANK *v.* HALL.

*Hearing.* On the hearing of a cause in Chancery, the Court will not allow affidavits to be read to supply alleged defects in the return, as to the merits of the controversy.

*Violation of injunction : Proceeding for contempt.* A party who alleges that an injunction has been violated, and proceeds for the contempt, to punish the offender, must show with reasonable certainty the facts by which the charge may be established.

*Heard October 5, 6. Decided October 11.*

Appeal in Chancery from Calhoun Circuit.

This was a proceeding in the Circuit Court for the County of Calhoun in Chancery in a cause wherein David Verplank was complainant, and Harvey B. Hall was defendant, to punish the defendant for the alleged violation of an injunction.

*Brown & Patterson,* for complainant.

*Thos. G. Pray,* for defendant.

COOLEY, J.

The proceeding brought before us by the appeal in this cause was one for the punishment of Hall, for an alleged violation of an injunction, which commanded him to " desist and refrain from entering upon the south part of the north half of the southeast quarter, fractional, of section number nine in town two south, of range four west, beginning at the southeast corner; thence running south, eighty-six degrees west, twelve chains and fifty links; thence north, five degrees west, twelve chains and eighty links; thence north eighty-six degrees east, twelve chains and fifty links; thence south five degrees east, twelve chains and eighty links, being sixteen acres of land in the township of Sheridan," in Calhoun County. The violation alleged consisted in going upon the land and cutting some poles, valued by the witnesses at three dollars. For this he was convicted in the Court below, and ordered to pay dam-

ages, costs, and expenses, amounting in all to two hundred and eighty dollars and forty cents.

An appeal having been taken to this Court, the case was brought on for hearing at the last April term, but when the record was presented to the Court, so many elements of uncertainty appeared in it, in matters in respect to which it was supposed capable of being rendered more specific, that the Court stopped the argument and directed that the case stand over for the purpose of enabling the parties to take such action in regard to the record as they should deem important. At the present term the case is found upon our docket; the record remaining substantially the same as before.

At this term a motion is made by the complainant to dismiss the cause for want of a complete record. The motion is based upon an affidavit of counsel and certificate of the Circuit Judge, showing that a deposition which was taken and made use of in the Court below, is not included in the record. But such an imperfection constitutes no ground for dismissing the appeal. If a paper is filed in the court, which is of a character to give the Court no jurisdiction, it is proper to dismiss it; but the Court has jurisdiction of an appeal notwithstanding an imperfect return, and the party interested in making the return more complete should take the proper steps in due season for that purpose.

It was then suggested that the case ought to stand over to give the complainant an opportunity to take such steps to perfect the record as he might be advised; and an affidavit was filed to show that the defect was discovered but recently. The difficulty here is, that if the party has but just discovered the alleged imperfection, he has been guilty of such laches that the Court cannot now relieve him. He professed to be prepared for hearing in April, and the

VERPLANK v. HALL.

hearing was begun; and if he could be excusable for going to a hearing without understanding the condition of the record, he certainly could not with propriety postpone any longer the proper examination of the record, after his attention had been particularly called to defects in it by the Court. To delay six months more before making the necessary investigation, was to put an appeal to the indulgence of the Court, on the ground of surprise, entirely out of the bounds of reason.

The complainant then presents to the Court an affidavit showing that there are figures upon a plat of the premises attached to one of the depositions, which were not there when the deposition was sworn to; and he proposes that this affidavit shall be considered on the hearing. Here again the proper practice has been wholly misapprehended. If the deposition has been tampered with, it was done before the return was made to this Court; and any motion to restore it to its original condition, would have to be made in the Court below. We sit here as a Court of appeal in chancery causes, and in reviewing a decree or order of the Circuit Court, we have no right to consider any evidence not returned to us from that Court. No new case can be made by affidavit in this Court, nor is the record to be falsified in this way. The complainant's attention was called to a difficulty in connection with this very plat at the April term; and there has been ample time since for an application to the Circuit Court for the proper correction.

The question upon the merits depends upon the correct location of the sixteen acres of land described in the injunction. The defendant does not deny the cutting of the poles, but he disputes their being within the bounds described. It appears that the southeast quarter of the section nine mentioned, was by the United States survey,

fractional, there being a small meandered lake or pond, which extended into it on the eastern side. One question in the case is, where the southeast corner of the north half of this quarter section is located; whether on the meandered line of the pond, or on what would be the east line of the section if extended through the pond; in which latter case the corner of the half quarter section would be in the water, and the sixteen acre tract would lie a considerable distance east of the place where the poles were cut. The complainant insists that no part of the pond is to be considered as being within this half quarter section, and that the southeast corner thereof is at the point where the line between the north and south halves of the quarter section would intersect the meandering line on the shore of the pond.

It does not become necessary for us to consider whether this view of the complainant is the correct one or not, because we think, assuming it to be correct, he has still failed to show, with any degree of reasonable certainty, that the cutting of poles by defendant was upon the sixteen acres.

The complainant was examined as a witness to prove the cutting of the poles, and he testified that they were cut "ten or twelve, or may be fifteen rods" east of the quarter line running north and south through the section. He never measured the distance, but only guessed at it. David H. Miller, a surveyor, testifies to having surveyed out the sixteen acres, assuming the southeast corner to be on the meandering line, and he testifies that in doing so he did not reach the quarter line, and never measured the distance from the sixteen acres to the quarter line, but should judge it to be about two rods. As the sixteen acre lot is fifty rods in length, east and west, this would make the quarter line distant from the lake fifty-two rods. The

21 MICH.—H³.

complainant put in no more definite evidence than that of these two witnesses to determine either the precise location of the trespass, or the distance of the sixteen acre lot from the quarter line.

On the other hand, David A. Tichenor, another surveyor, testifies to having surveyed this quarter section, and that the distance from the pond to the north and south quarter line of the section was one hundred and five rods and a fraction. If this testimony is reliable, the cutting was several rods east of the sixteen acres, even assuming it to have been fifteen rods west of the quarter line, as Verplank guesses it may have been. And we do not see in this record anything which satisfies us that this testimony is mistaken. The discrepancy between Miller's estimate of fifty-two rods, and Tichenor's measurement of one hundred and five, is certainly very great, but if Tichenor, who assumed to make accurate measurement, was mistaken, the complainant, when it was so easy to do so, ought to have had the necessary steps taken to put the matter beyond controversy. The burden of proof was upon him to prove the contempt alleged; and we think, instead of showing it clearly, the preponderance of evidence is against him on his own theory of the legal question involved.

The order of the Circuit Court must therefore be reversed, with costs of both courts.

The other Justices concurred.